UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL ENERGY REGULATORY
COMMISSION,

    Plaintiff,

    v.

CITY POWER MARKETING, LLC, and
K. STEPHEN TSINGAS,

    Defendants.

Civil Action No. 15-1428 (JDB)

## MEMORANDUM OPINION & ORDER

Before the Court is [36] defendant City Power Marketing's Rule 56(d) motion for discovery. For the following reasons, City Power's motion for discovery is granted in part and denied in part.

## I. BACKGROUND

The Court's August 10, 2016 memorandum opinion discusses at length the complex background of this case, including the workings of the energy markets at issue and the alleged manipulative trades made by City Power Marketing. See Aug. 10, 2016 Mem. Op. [ECF No. 25] at 1–16. Rather than repeat that discussion here, the Court will largely assume readers' familiarity with this case and refer them to the Court's previous opinion if a more detailed discussion about the facts and regulatory background is needed. See id. But to sum up this case, the Federal Energy Regulatory Commission ("FERC") brought an administrative action against City Power and its founder Stephen Tsingas (collectively, "City Power"), a virtual trader[1] in the wholesale electricity

---

[1] Virtual traders do not actually supply or receive electricity, but instead engage in arbitrage trades, betting on how electricity prices will fluctuate over time. These traders will either purchase or sell a position in the day-ahead market, and then do the exact opposite in an equal volume at the same location in the real-time market, which means that their transactions never actually result in the flow of electricity through the physical grid. See City Power Mktg., LLC, 152 FERC ¶ 61,012 at P 17 n.38 (2015) ("Penalty Assessment Order").

market, for conducting allegedly manipulative trades in violation of the Commission's Anti-Manipulation Rule, 18 C.F.R. § 1c.2.  FERC ultimately found that City Power had violated the Anti-Manipulation Rule by conducting trades disguised as arbitrage transactions, that were in fact conducted only to collect marginal surplus loss allocation (MLSA) payments.[2]  City Power Mktg., LLC, 152 FERC ¶ 61,012 ("Penalty Assessment Order") at P 6.[3]  FERC also found that City Power violated Market Behavior Rule 3, 18 C.F.R. § 35.41(b), which requires truthful communications with the Commission, because City Power failed to reveal the existence of certain archived instant messages during the course of FERC's investigations into the alleged manipulative trades.  Id. at P 9.  FERC assessed a $15 million penalty against City Power,[4] id. at P 1, 257, and when City Power did not pay, FERC filed this action seeking an order affirming the penalty.  See Compl. [ECF No. 1].

After this Court denied City Power's motion to dismiss this action in its previous opinion, FERC filed a motion for summary judgment [ECF No. 30].  In response, City Power filed a motion under Federal Rule of Civil Procedure 56(d), seeking discovery before the summary judgment motion is adjudicated.  See Rule 56(d) Mot. [ECF No. 36].  City Power argues that summary judgment is premature because it has not yet had the opportunity to conduct discovery; FERC counters, essentially, that City Power already had the opportunity to present evidence during the

---

[2] MLSA payments are essentially a rebate that traders receive compensating for a price adjustment that the market operator makes when calculating "line loss" and the actual cost of transmission to a particular location.  Line loss occurs when electricity is transmitted across the power grid, because some energy is always lost from the transmission in the form of heat.  See Aug. 10, 2016 Mem. Op. at 6–7 (explaining MLSA in more detail) (citing Alt. City. Elec. Co. v. PJM Interconnection, LLC, 117 FERC ¶ 61,169 at PP 12–13, 27–28 (2006)).  The amount of MLSA payments that a trader receives for a particular transaction depends on the size of the paid transmission reservation the trader makes.  Id. at 8 (citing Penalty Assessment Order at PP 22–25).

[3] A note on the citation conventions used in this opinion.  For citations to the FERC Reports, the Court has used FERC's own method of citation, finding this to be the most precise citation method.  Thus, a citation to the Penalty Assessment Order, 152 FERC ¶ 61,012 at P 6, refers to the numbered paragraph 6 (not page 6) of the FERC order which begins at 152 FERC ¶ 61,012 in the FERC Reports.

[4] A $14 million penalty was assessed against the company City Power Marketing, and a $1 million penalty was assessed against Tsingas.  Penalty Assessment Order at P 1.

administrative proceeding before the Commission, and that no discovery is necessary because FERC has sufficiently proven its case.

## II. DISCUSSION

Federal Rule of Civil Procedure 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Thus, Rule 56(d) "establishes a mechanism for nonmovants who lack the facts they need to seek an opportunity to gather more information before responding to a motion for summary judgment." Grimes v. Dist. of Columbia, 794 F.3d 83, 92 (D.C. Cir. 2015). The decision whether to grant or deny a motion under Rule 56(d) lies within the district court's discretion. Pardo-Kronemann v. Donovan, 601 F.3d 599, 611–12 (D.C. Cir. 2010). Typically, however, "summary judgment is premature unless all parties have had a full opportunity to conduct discovery." Convertino v. U.S. Dep't of Justice, 684 F.3d 93, 99 (D.C. Cir. 2012) (internal quotation marks omitted). Accordingly, "[a Rule 56(d)] motion requesting additional time for discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." Id. (internal quotation marks omitted).

That being said, the party seeking relief, in this case City Power, still bears the burden of making the appropriate showing that discovery is needed. U.S. ex rel. Folliard v. Gov't Acquisitions, Inc., 764 F.3d 19, 26–27 (D.C. Cir. 2014). In order to obtain relief under Rule 56(d), a party must submit an affidavit or declaration that satisfies three criteria. The declaration must: (1) "outline the particular facts [the party] intends to discover and why those facts are necessary

3

to the litigation"; (2) explain why the party has not been able to produce those facts; and (3) demonstrate that the information sought is, in fact, discoverable. Convertino, 684 F.3d at 99–100. Boilerplate language or vague assertions will not satisfy this standard. See Folliard, 764 F.3d at 29; Jeffries v. Lynch, —F. Supp. 3d—, 2016 WL 6783196, at *8 (D.D.C. Nov. 15, 2016).

Here, there is no dispute that no discovery has taken place since FERC filed this suit. In order to properly contest FERC's motion for summary judgment, City Power claims that it needs discovery with respect to both the market manipulation claim and the market behavior claim, as well as regarding FERC's jurisdiction over City Power's trades. FERC argues, however, that discovery is unnecessary because City Power was allowed to present evidence during the administrative proceeding that resulted in the penalty assessment, and because FERC itself conducted some discovery in that same proceeding and turned relevant information over to City Power. See Opp'n to Rule 56(d) Mot. [ECF No. 37] at 8, 14, 16–17.

But as the Court noted in its previous opinion, although City Power had the opportunity to present evidence in the administrative proceeding, it did not have the ability to compel the production of evidence from other parties or non-parties. See Aug. 10, 2016 Mem. Op. at 19 (citing FERC v. Maxim Power Corp., Civ. No. 15-30113-MGM, 2016 WL 4126378, at *10 (D. Mass. July 21, 2016)). Moreover, as City Power points out, the information it seeks to discover now was not necessarily included in the information produced by FERC during the administrative proceeding, because FERC itself never sought this information. See Reply for Rule 56(d) Mot. [ECF No. 38] at 3–4. In short, while some discovery occurred during the administrative proceeding, City Power still has not had a "full opportunity" for discovery. Indeed, FERC holds many facts relevant to this case, but what discovery took place at the administrative level was distinctly one-sided. Further, this Court concluded in its previous opinion that "[n]otwithstanding

the significant proceedings that occurred at the agency level, the Court will treat this as a standard civil action, governed by the Federal Rules of Civil Procedure." Aug. 10, 2016 Mem. Op. at 16 (citing Maxim Power, 2016 WL 4126378 at *4–11)). For present purposes, then, this means that City Power will be able to obtain discovery under Rule 56(d) if it can demonstrate that it is entitled to relief under that provision.

The Court concludes that City Power has done so. The declarations that City Power has submitted satisfy the Convertino criteria with respect to both the market manipulation claim and the market behavior claim. However, the Court finds that discovery as to FERC's jurisdiction in this matter is unnecessary, because the Court has already concluded that FERC had jurisdiction over City Power's trades. The Court will discuss each issue in turn.

### A. MARKET MANIPULATION CLAIM

The central premise of FERC's case is that virtual traders like City Power are allowed to conduct Up-to-Congestion (UTC) trades for arbitrage purposes because this helps bring about price convergence between the day-ahead and real-time markets, promoting overall market efficiency. See Penalty Assessment Order at P 102, 115. FERC has previously expressed concern that allowing virtual traders like City Power to receive MLSA payments at all could cause them to conduct trades just to receive larger payments, potentially undermining the market efficiency gains that result when virtual traders conduct transactions for arbitrage purposes. See Black Oak Energy, LLC v. PJM Interconnection, LLC, 125 FERC ¶ 61,042 at P 38 n.46, P 43 (2008). Nevertheless, FERC ultimately decided to allow virtual traders to receive MLSA payments for UTC trades. Id. at PP 48–49; see also Penalty Assessment Order at P 25. Here, FERC claims that City Power engaged in market manipulation by conducting trades designed solely to collect MLSA payments rather than for legitimate arbitrage purposes, and that these trades were disguised to deceive the

market operator, PJM, as to their true, illegitimate purpose.  Compl. ¶ 3.  City Power raises three principal defenses to this claim: that the trades it placed were legitimate arbitrage trades involving real risk; that arbitrage is not the only legitimate trading purpose in the energy market; and that PJM was not deceived as to the purpose of the trades.  See Rule 56(d) Mot. [ECF No. 36-1] at 5–6.

City Power's declaration lists specific facts and data it seeks to discover that could help support its asserted defenses.  For example, City Power seeks discovery of non-public market data from PJM and the Independent Market Monitor (IMM) regarding price volatility and the number of particular trades that fail to clear to show that there was a history of both price volatility and trades failing to clear along the paths City Power used in its round-trip trades, which created a legitimate expectation of arbitrage because one side of the trade could fail to clear and create exposure.  See id. at 6; Mullins Decl. [ECF No. 36-2] ¶ 5.  City Power also seeks data to show that there was a sufficient history of price separation along the paths of its other UTC trades which gave it a legitimate expectation that an unusual, but significant, price separation would occur between certain trading nodes.  See Rule 56(d) Mot. at 6–7; Mullins Decl. ¶ 6.

FERC responds that City Power is creating a post-hoc rationale for its trades and that this data is irrelevant to City Power's intent because the data is non-public and City Power did not have access to it at the time.  But while such data is not direct evidence of City Power's intent, the data could certainly support City Power's claim that it was pursuing a legitimate arbitrage strategy by independently validating City Power's asserted expectations of market conditions and behavior.  In other words, if City Power can show that its asserted trading strategy was a legitimate one based on market conditions at the time, that makes it more likely that this strategy was in fact the one City Power was actually pursuing.  Resolution of the issue as to whose version of events—FERC's

or City Power's—is ultimately more believable is not appropriate until both parties' versions have been fully presented to the Court.

Likewise, City Power seeks internal information from PJM and the IMM about the propriety of trades placed for purposes of collecting MLSA payments, citing public statements suggesting that PJM's views on the subject have changed over time. See Mullins Decl. ¶ 3(iii) (citing annual State of the Market reports from the IMM). Similarly, it seeks internal communications and data about how PJM and the IMM have dealt in the past with trades similar to those City Power placed, and about the purposes and market benefits of UTC trades, alleging that PJM has made public statements suggesting that these trades provide liquidity benefits, i.e., are not just for the purpose of reducing price spreads between the day-ahead and real-time energy markets. Id. ¶¶ 3(iv), 4, 7. This information could be used to undermine FERC's claim that arbitrage is the only legitimate purpose for trading.

FERC protests that PJM does not have the ability to set policy for FERC as to what constitutes market manipulation. Opp'n to Rule 56(d) Mot. at 3. True enough, but the opinions and positions of the market operators and monitors are nonetheless relevant sources of guidance as to how FERC will interpret and apply market rules. See, e.g., PPL Energy Plus, LLC v. NYISO Inc., 115 FERC ¶ 61,383 at P 29 (2006). Significantly, City Power claims that it and other traders like it were told that their trades, while evidently concerning to the IMM, did not actually violate market rules. Mullins Decl. ¶ 3(iv). PJM's and the IMM's opinions as to those rules, therefore, may provide evidence as to what the prevailing views in the market were at the time about the "acceptable" purposes of UTC trades. This information has relevance both to FERC's claim that it was well-known that arbitrage was the only legitimate trading purpose, as well as to what City Power's intent may have been at the time.

FERC also argues that City Power already received internal PJM data and communications relating to the enforcement referral, which reflected PJM's concerns about the trades. Opp'n to Rule 56(d) Mot. at 3–4. But the Court notes that City Power is not necessarily seeking this information regarding the referral. Rather, it is seeking historical market data and communications prior to July 2010 relating to how these types of trades were viewed and what role they were thought to play in the market more generally, which is again relevant both to the general purpose of such trades and to the reasonableness of City Power's asserted expectations. Moreover, FERC does not appear to disagree with City Power's statement that FERC never sought discovery from the IMM, and that it did not seek discovery of information beyond the scope of the referral, meaning that City Power did not in fact ever receive the information it now seeks.

The other information City Power seeks regarding the market manipulation claim is along similar lines: non-public data or communications from PJM, the IMM, and FERC itself that are relevant to City Power's asserted defenses and that it did not have the opportunity to obtain during the administrative proceeding before the Commission. Hence, City Power has adequately explained why the facts on which it seeks discovery are relevant to the litigation and why it could not previously obtain this discovery, satisfying the first two requirements for obtaining relief under Rule 56(d).

The only remaining question is whether the information City Power seeks is discoverable, and it appears that it is. Most of what City Power seeks is internal data that PJM and the IMM likely collect in their capacities as market operator and monitor. See Mullins Decl. ¶ 2; PJM Interconnection Open Access Transmission Tariff (OATT), Attachment M—PJM Market Monitoring Plan §§ V, VI (2016), http://www.pjm.com/media/documents/merged-tariffs/oatt.pdf (discussing collection of data and production of market reports); Forward Market Operations, PJM

Manual 11: Energy & Ancillary Servs. Market Operations §§ 1.1, 2.10 (2016), http://www.pjm.com/~/media/documents/manuals/m11.ashx (discussing PJM responsibility for collecting, analyzing, and disseminating data related to aggregate demand, transactions, transmissions, and price/bid forecasts); FERC, Division of Market Oversight, Energy Primer: A Handbook of Energy Market Basics [ECF No. 30-14] at 95, 114–15 (2015) (discussing how PJM constructs supply and demand curves and monitors virtual trades). City Power's declaration indicates that, based on the way PJM and IMM databases are maintained, the data City Power seeks is likely accessible and could be provided during discovery. Mullins Decl. ¶¶ 2–3. FERC does not dispute that this evidence would be discoverable.

Accordingly, City Power is entitled to discovery on the market manipulation claim.

B. MARKET BEHAVIOR CLAIM

FERC also claims that City Power violated Market Behavior Rule 3, 18 C.F.R. § 35.41(b), which requires market participants to be truthful and not misleading in all communications with the Commission. Intent to deceive is not required for liability under this rule; the only available defense is that the defendant exercised due diligence in attempting to communicate truthfully. See Kourouma v. FERC, 723 F.3d 274, 278–79 (D.C. Cir. 2013). FERC claims that City Power's responses to certain data requests were misleading and omitted material facts about the existence of instant messages (IMs) exchanged between defendant Tsingas and Mr. Jurco, a former City Power partner, regarding the suspect trades. According to FERC, Tsingas was aware that Jurco had archived some of their exchanges, but never revealed this to FERC investigators. FERC Enforcement Staff Report & Recommendation, City Power Mktg, LLC & K. Stephen Tsingas, App'x A to Pl.'s Ex. 2 ("Staff Report") [ECF No. 1-4], at 53–54; Penalty Assessment Order at PP 54–59. City Power, unsurprisingly, claims that its responses were accurate and that it exercised

9

due diligence in responding to FERC's requests, because the IMs in question were never actually in City Power's possession, having originated from a private account. Rule 56(d) Mot. at 11–15.

City Power seeks discovery from FERC relating to how FERC obtained the IMs and from whom, as well as information about the archive settings on the IMs, arguing that it does not know how FERC obtained these IMs and that this information is likely to show that Tsingas and City Power were truthful in asserting that the IMs were never in City Power's custody or control. See Ifrah Decl. [ECF No. 36-3] ¶ 23. For similar reasons, City Power states that it needs discovery from FERC regarding the Commission's deposition of Mr. Jurco and the documents, including some IMs, that he produced, particularly given that Mr. Jurco testified for the Commission in the administrative proceeding. Id. ¶ 24. This information could potentially help City Power illustrate what it knew and when, whether it had access to the IMs at issue, and whether its statements were complete and accurate based on its knowledge at the time.

Regarding its due diligence defense, City Power seeks information from former employees responsible for handling the FERC investigation as to what steps City Power took to preserve and compile evidence in response to FERC's document retention letter and various data requests, as well as similar information from City Power's various former attorneys as to what advice City Power was given about compliance with the data requests and whether any of City Power's attorneys ever learned of a deficiency in City Power's responses. Id. ¶¶ 15–21. Such information could help support City Power's due diligence defense by illustrating or corroborating what steps City Power took to ensure that its responses to FERC were accurate and complete, for instance by demonstrating that City Power appropriately retained necessary documents, that City Power's attorneys reviewed City Power's and Tsingas's responses before they were submitted, and that any deficiencies were corrected. City Power states that it has attempted to obtain this information from

some of these individuals, but has been informed that this information will only be produced in response to a formal discovery demand or court order. Id. ¶ 22.

Accordingly, City Power has sufficiently explained what additional facts it seeks with respect to this claim, why those facts are necessary to its defense, and why it has so far been unable to obtain this information. In addition, City Power has sufficiently shown that this information is likely discoverable: testimony, either written or oral, from these individuals will likely reveal the information that City Power seeks, and presumably City Power and Tsingas would be willing to waive attorney-client privilege where necessary with regard to advice given by their former attorneys.

FERC argues that discovery on the market behavior claim is unnecessary because it has "unequivocally" established City Power's liability with respect to this claim, which no amount of discovery will be able to change. Opp'n to Rule 56(d) at 28–29. But this argument ignores the possibility of a due diligence defense. And however persuasive FERC's evidence may appear at this stage, before any discovery has taken place, that does not mean that it will remain so once the factual record is complete. The Court will have the opportunity to evaluate the persuasiveness of each party's evidence once all evidence has been presented. In the meantime, however, City Power has shown that it is entitled to pursue relevant facts that it believes will support its arguments as to this claim. There is no assertion by FERC of undue burden or proportionality regarding the proposed discovery now before the Court.

### C. JURISDICTION

Finally, City Power reasserts its argument that FERC does not have jurisdiction over the trades at issue in this case because they are virtual trades that do not ultimately affect the physical transmission of power. Hence, City Power seeks discovery from PJM about the degree to which

UTC trades affect the physical flow of energy or affect the availability of transmission reservations. See Rule 56(d) Mot. at 10; Mullins Decl. ¶ 9. But the Court has already concluded in its previous opinion that City Power's reservation of transmission services is a sufficient basis for FERC's jurisdiction. Aug. 10, 2016 Mem. Op. at 32. As the Court found, it is irrelevant whether the reservation actually resulted in the flow of power, because all traders, including virtual traders, use the same transmission reservation system and therefore compete for transmission capacity. Id. This is sufficient to bring the trades within FERC's jurisdiction. Id. City Power, moreover, does not dispute that both the transmission reservations and the trades themselves took place—it merely disputes whether the trades ran afoul of the Anti-Manipulation Rule. Thus, there is nothing more to discover on this subject. The Court will therefore deny City Power's Rule 56(d) motion with respect to FERC's jurisdiction.

### III. CONCLUSION

For the foregoing reasons, the Court will allow discovery to proceed on both the market manipulation and market behavior claims. The Court expects, however, that discovery in this case will comply with the ordinary limits set out in the Federal Rules of Civil Procedure, including, for example, the limits on the number of depositions and interrogatories that may be taken by each side. Both parties are warned that the Court will not permit discovery to turn into a fishing expedition or to be used as a tactic for delay.

Accordingly, it is hereby

**ORDERED** that [36] City Power's Rule 56(d) motion is **GRANTED** with respect to the market manipulation and market behavior rule claims, and **DENIED** with respect to FERC's jurisdiction, which has already been sufficiently established; it is further

**ORDERED** that the parties shall jointly file a proposed scheduling order by not later than March 2, 2017;

**ORDERED** that a status conference in this matter is set for March 8, 2017 at 9:30 a.m. in Courtroom 30; and it is further

**ORDERED** that [30] FERC's motion for summary judgment is **DENIED WITHOUT PREJUDICE.**  FERC may renew its motion after the completion of discovery and in accordance with a schedule to be set by the Court.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated:  January 30, 2017